

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEC 0 6 2023

UNITED STATES DISTRICT JUDGE
MARY M. ROWLAND

UNITED STATES OF AMERICA

v.

JASON BROWN

No. 19 CR 858

Judge Mary M. Rowland

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant JASON BROWN, and his attorneys, THOMAS A. DURKIN and JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.      The superseding indictment in this case charges defendant with attempting to provide material support and resources, namely money in the amount of $500 and personnel, to a foreign terrorist organization, namely the Islamic State of Iraq and al-Sham ("ISIS"), knowing that the organization was a designated foreign terrorist organization, and that the organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B (Counts One, Two and Three); conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 100 or more marijuana plants, a Schedule I Controlled Substance, and a quantity of a mixture and substance

containing a detectable amount of marijuana, a Schedule I controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Count Four); distribution of a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethy-4-piperidinyl] propenamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) (Count Five); distribution of a controlled substance, namely, a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) (Count Six); possession with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21 United States Code, Section 841(a)(1) (Count Seven); felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) (Count Eight); and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, 924(c)(1)(A) (Count Nine).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with attempting to provide material support and resources, namely money in the amount of $500 and personnel, to a foreign terrorist organization, namely ISIS, knowing that the organization was a designated foreign terrorist organization, and that the organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B; Count Five, which charges defendant with distribution of a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethy-4-piperidinyl] propenamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); and Count Nine, which charges defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, 924(c)(1)(A).   In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One, Five and Nine of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline

3

§ 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

      a.      With respect to Count One of the superseding indictment:

On or about August 16, 2019, at Oakbrook, Illinois, in the Northern District of Illinois, and elsewhere, defendant, did knowingly attempt to provide material support and resources, namely money in the amount of $500 and personnel, to a foreign terrorist organization, namely the Islamic State of Iraq and al-Sham ("ISIS"), knowing that the organization was a designated foreign terrorist organization, and that the organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B and 2.

More specifically, on or about October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a foreign terrorist organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of the Executive Order 13224.

On or about May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq as a foreign terrorist organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant as its primary name. The Secretary also added the following aliases to the foreign terrorist organization listing: The Islamic State of Iraq and al-

4

Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh Sham, Daesh, Dawla al Islamiya, and Al'Furquan Establishment for Media Production.

On or about September 21, 2015, the Secretary of State added the following aliases to the foreign terrorist organization listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated foreign terrorist organization.

Prior to 2019, defendant knew that ISIS was a designated foreign terrorist organization and that the organization had engaged in terrorist activity and terrorism in Syria and elsewhere.

For instance, defendant visited pro-ISIS websites and listened to pro-ISIS sermons online. In addition, on or about January 30, 2019, defendant texted a confidential source ("CS-3") multiple times with links to a website for pro-ISIS Paltalk chat room.

On or about February 15, 2019, defendant met with CS-3. Defendant gave CS-3 a fist bump and said, "Oh Brother, I knew it," after CS-3 stated he had a contact, who unbeknownst to defendant was an undercover law enforcement officer (the "UC"), in Syria who was fighting with ISIS.

On or about April 3, 2019, CS-3 met defendant and showed defendant videos purportedly from the UC, in which the UC was professing to be engaged in fighting on behalf of ISIS in Syria. On or about April 10, 2019, again during an in-person

5

meeting between CS-3 and defendant, CS-3 showed defendant another video of the UC purportedly fighting for ISIS in Syria.

CS-3 provided defendant the UC's phone number and on or about April 3, 2019, defendant downloaded a messaging application on which he was able to send text messages to the UC. On or about July 11, 2019, after defendant expressed an interest in supporting the UC and ISIS, the UC texted defendant a means by which defendant could send the UC money.

On or about May 13, 2019, CS-3 had an in-person meeting with defendant during which defendant told CS-3 that he, "gonna have something" for the UC, by which defendant meant that defendant wanted to send money to the UC who was purportedly fighting for ISIS in Syria.

On or about May 23, 2019, CS-3 told defendant that CS-3 intended to send money to support ISIS to "Abu Jaffar," who defendant understood to be the UC, who was posing as an active ISIS member fighting in Syria.

During a later conversation on August 19, 2019, defendant explained to CS-3 that he wanted to help the UC, but defendant could not send the money the way UC requested because defendant could get in trouble for "aiding and evading," by which defendant meant that he knew it was illegal to provide material support to ISIS. On or about July 26, 2019, defendant told CS-3 that he supported following Sharia law and not democracy.

6

On or about August 16, 2019, CS-3 met with defendant and told defendant that CS-3 intended to send money to "Abu Jaffar" soon, which defendant understood to mean that CS-3 was going to send money to the UC who was purportedly fighting on behalf of ISIS in Syria. Defendant responded, "Oh ok." Defendant counted money under the table then stated, "Well you can put this one on me." By which defendant meant that the money defendant was providing should be given to the UC who was fighting on behalf of ISIS in Syria. CS-3 stated, "Just give me five hundred. No more. Cause I got five. Want me to tell him? Or . . .no? Tell Abu Jaffar it's from you or no," which defendant understood to mean that CS-3 was also sending $500 to support ISIS and asked if defendant wanted the UC to know that the money came from defendant. Defendant responded, "Allah knows," and handed CS-3 $500 in $20 bills. Defendant further stated, "That's the only one that needs to know as long as they [ISIS] get it. That's it. . . . He'll [Allah] find out on, on that day.". Later in the conversation defendant confirmed, "Oh yeah. You ain't gotta say my name."

On or about September 6, 2019, CS-3 showed defendant a picture that purported to be the UC. CS-3 told defendant that the UC had all of his "gear" because of "last time." Defendant understood this to mean that the UC, who defendant was led to believe was fighting in Syria on behalf of ISIS, was able to use the money defendant provided ~~to purchase weapons and equipment used to fight~~. Defendant responded, "That's great. It don't get no better than that, Ahk (brother)." Later that same day defendant gave CS-3 another $500 intended to support the UC, and ISIS,

7

whom defendant still believed was fighting on behalf of ISIS in Syria. On or about October 4, 2019, defendant again gave CS-3 an additional $500 intended to support the UC, and ISIS, whom defendant continued to believe was fighting on behalf of ISIS in Syria.

b.     With respect to Count Five of the superseding indictment:

On or about November 1, 2019, in the Northern District of Illinois, Eastern Division and elsewhere, defendant did knowingly and intentionally distribute a controlled substance, namely 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethy-4-piperidinyl] propenamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, on or about November 1, 2019, defendant mailed at least five parcels from a self-service kiosk in a post office in Murietta, California. Three of the parcels were addressed to an address in Bellwood, Illinois and the other two were addressed to an address in Lombard, Illinois. Defendant knew that one of the three packages addressed to Bellwood, Illinois contained approximately 993 blue pills stamped "M30" and had a total weight of approximately 107.3 grams of fentanyl. Defendant also knew that the other two packages addressed to Bellwood, Illinois contained approximately 1875.7 grams and 1863.2 grams respectively of marijuana. Defendant knew that the packages addressed to Lombard, Illinois contained approximately 1.9 kilograms each of marijuana. Defendant was mailing the

8

controlled substances back to locations in the Northern District of Illinois to distribute these substances to buyers for his own personal profit. All five packages were intercepted by law enforcement before reaching their final destinations.

      c.     With respect to Count Nine of the superseding indictment:

On or about November 14, 2019, at Lombard, Illinois, in the Northern District of Illinois, Eastern Division, defendant did knowingly possess a firearm, namely a loaded Ruger Model P345 .45 caliber pistol, bearing serial number 665-01473, a loaded Glock 9mm caliber pistol, bearing serial number KBS192, a loaded Glock .45 caliber pistol, bearing serial number WFA-396, and a loaded Sarsilmaz 9mm pistol, bearing serial number T1102-15G01324, in furtherance of a drug trafficking crime for which defendant may be prosecuted in a court of the United States, namely, possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count Seven of the Superseding Indictment; in violation of Title 18, United States Code, Section 924(c)(1)(A).

On or about November 14, 2019, defendant possessed approximately 1,415 grams of a mixture containing methamphetamines in a safe in defendant's home in Lombard, Illinois. In the same safe, defendant had a loaded Sarsilmaz, 9mm pistol, bearing serial number T1102-15G01324 and a loaded Glock, .45 caliber pistol, bearing serial number WFA-396. Defendant also stored additional firearms and ammunition throughout defendant's Lombard home, including: a loaded Ruger Model P345, .45 caliber pistol, bearing serial number 665-01473 under the kitchen sink; a

loaded Glock, 9mm caliber pistol, bearing serial number KBS 192 inside a coat near the front door; a rifle magazine containing 18, 7.62x39mm ammunition in a the basement crawlspace; a box containing 50 Winchester, .40 caliber Smith & Wesson 180 grain hollow-point ammunition also in the basement crawlspace; and a box containing 50 Luger, 9mm ammunition in a bedroom sock drawer. On November 14, 2019, defendant also had approximately $264,310 in narcotics proceeds in his home. Defendant maintained the mixture containing methamphetamines and the firearms as part of his drug distribution business.

Defendant possessed the mixtures containing methamphetamines inside a safe because he was protecting the controlled substances and intended to distribute the controlled substance for his own profit, which is a felony drug trafficking offense, in violation of Title 21, United States Code, Section 841(a)(1). Moreover, defendant possessed the firearms in the safe in order to better secure the controlled substances and protect himself and the controlled substances from being stolen or taken without his authorization.

In 2018 and 2019, defendant also distributed other controlled substances. For example, defendant ran an operation that grew and distributed marijuana. On or about October 15, 2019, defendant mailed 10 packages containing a total of approximately 5 kilograms of marijuana from California to three different addresses in the Chicagoland area. In addition, on or about November 14, 2019, law enforcement recovered 350 live marijuana plants and 6.7 kilograms of marijuana

from a residence defendant operated in California. Beginning no later than in or about June 2018 and continuing until in or about November 2019, defendant and others known and unknown, made at least 28 trips from California to the Chicagoland area transporting marijuana and/or narcotics proceeds. Again, defendant brought the marijuana back to the Chicago area to sell it to customers for a profit.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of any number of years, including life.

b.     Count Five carries a maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of 5 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Five also carries a maximum fine of $5,000,000. Defendant further understands that with respect to Count Five, the judge also must impose a term of supervised release of at least four years, and up to any number of years, including life.

c.     Count Nine carries a maximum sentence of life imprisonment, and a statutory mandatory minimum of 5 years' imprisonment. The sentence of

11

imprisonment for Count Nine is required to be consecutive to any other sentence imposed. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Nine also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Nine, the judge also may impose a term of supervised release of not more than five years.

d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $5,500,000, a period of supervised release, and special assessments totaling $300.

### Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the

defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.       For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.       **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.       **Offense Level Calculations**.

**Count One**

i.       The base offense level is 26, pursuant to Guideline § 2M5.3(a).

ii.       The offense level is increased by 2 levels, pursuant to Guideline § 2M5.3(b)(1)(E), because the offense involved the provision of funds with the intent, knowledge, or reason to believe that the funds were to be used to commit or assist in the commission of a violent act.

iii.       The offense level is increased by 12 levels, pursuant to Guideline § 3A1.4(a), because the offense is a felony that involved, or was intended to

13

promote, a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B.

   iv.  The total offense level for Count One, is 40.

    **Count Five**

   v.  The base offense level is 32, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(4), because the converted drug weight of the total quantity of narcotics for which defendant is accountable, approximately 54.25 kilograms of marijuana, 107.3 grams of fentanyl, and 1.415 kilograms of methamphetamine is at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. Pursuant to Application Note 8(B) to Guideline § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted using the Drug Conversion Tables, combined, and then referred to the Drug Quantity Table in Guideline § 2D1.1 to obtain the offense level. Combining the converted drug weight for the marijuana, fentanyl and methamphetamine for which defendant is accountable equals approximately 3,152.5 kilograms. Therefore, the offense level is 32, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(4).

vi.     The offense level is increased by 2 levels, pursuant to Guideline § 2K2.1(a)(2) because the offense involved three to seven firearms.  The defense reserves the right to contest this Guideline provision.

vii.    The total offense level for Count Five, is 34.

### Count Nine

viii.   Pursuant to Guideline §2K2.4(b), the Guideline sentence is five years, the mandatory minimum term of imprisonment required by 18 U.S.C. § 924(c)(1)(A)(i), because a firearm was possessed in furtherance of a drug trafficking crime, namely possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1).

### Grouping

ix.     Pursuant to Guideline §§ 3D1.1 and 3D1.2(d), Count One, Count Five, and Count Nine are not grouped.

x.      Count One carries the highest offense level of 40.  Pursuant to Guideline § 3D1.4(a), Count One counts as one unit. Count Five is 5 to 8 levels less serious than Count One because the offense level is 34.  Pursuant to Guideline § 3D1.4(b), Count Five counts as one-half unit.

xi.     Therefore, there are one and one-half total units. Pursuant to Guideline § 3D1.4, one level is added to the group with the highest offense level because there are one and one-half units. This results in a combined offense level of 41.

15

xii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xiii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 15 and defendant's criminal history category is VI:

i.     On or about June 15, 2001, defendant was convicted of manufacture/delivery of a controlled substance in the Circuit Court of Cook County,

Illinois, in Case Number 01CR0221601 and sentenced to 3 years' imprisonment consecutive to Case Numbers 01CR0418902 and 01CR0171302. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

       ii.      On or about June 25, 2001, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, in Case Number. 01CR0418902 and sentenced to 1 year imprisonment consecutive to Case Numbers 01CR0221601 and 01CR0171302. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

       iii.      On or about June 25, 2001, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, in Case Number. 01CR0171302 and sentenced to 1 year imprisonment consecutive to Case Numbers 01CR0221601 and 01CR0418902. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

       iv.      On or about June 10, 2004, defendant was convicted of driving on a suspended license in the Circuit Court of Cook County, Illinois, in Case Number 04121565601 and sentenced to 4 days' imprisonment. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

       v.      On or about June 14, 2004, defendant was convicted of unlawful use of a weapon in the Circuit Court of Cook County, Illinois, in Case Number 03130576501 and sentenced to 60 days' imprisonment and 1 year probation.

17

Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

   vi.  On or about June 22, 2004, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, in Case Number 03CR1374201 and sentenced to 1 year imprisonment consecutive to Case Number 04CR1107501. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

   vii.  On or about June 22, 2004, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, in Case Number 04CR1107501 and sentenced to 1 year imprisonment consecutive to 03CR1374201. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

   viii.  On or about December 29, 2005, defendant was convicted of second degree murder in the Circuit Court of Cook County, Illinois, in Case Number 05C44015101 and sentenced to 4 years' imprisonment. Defendant receives 3 criminal history points for that conviction, pursuant to Guideline § 4A1.1(a).

   ix.  On or about December 18, 2006, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, in Case Number 06401009101 and sentenced to 60 days' imprisonment. Defendant does not receive criminal history points for that conviction, pursuant to Guideline § 4A1.2(e).

x. On or about May 24, 2007, defendant was convicted of manufacture/delivery of cannabis in the Circuit Court of Cook County, Illinois, in Case Number 07CR0994201 and sentenced to 2 years' imprisonment. Defendant receives 3 criminal history points for that conviction, pursuant to Guideline § 4A1.1(a).

xi. On or about December 21, 2010, defendant was convicted of fleeing/eluding and reckless driving in the Circuit Court of Cook County, Illinois, in Case Number. 09400736201 and sentenced to 10 months' imprisonment. Defendant receives 2 criminal history points for that conviction, pursuant to Guideline § 4A1.1(b).

xii. On or about April 2, 2013, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, in Case Number. 11CR1346101 and sentenced to 1 year probation. Defendant receives 1 criminal history point for that conviction, pursuant to Guideline § 4A1.1(c).

xiii. On or October 18, 2013, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, in Case Number 12400716301 and sentenced to 12 months' conditional discharge. Defendant receives 1 criminal history point for that conviction, pursuant to Guideline § 4A1.1(c).

xiv. On or about September 29, 2016, defendant was convicted of unlawful possession of a firearm by a felon in the Circuit Court of Clayton County, Georgia, in Case Number 16CR02024-10 and sentenced to 2 years' imprisonment and

3 years' probation. Defendant receives 3 criminal history points for that conviction, pursuant to Guideline § 4A1.1(a).

xv.      Pursuant to Guideline § 4A1.1(d), defendant receives two criminal history points because defendant committed the instant offense while under a criminal justice sentence, namely, a term of probation imposed as a result of the conviction set forth above in subparagraph 9(c)(xiv).

d.    **Career Offender**. Defendant is a career offender, pursuant to Guideline § 4B1.1(a), because he has at least two convictions of either a crime of violence or a controlled substance offense, as set forth in subsections (c)(viii) and (x) above. Therefore, pursuant to Guideline § 4B1.1(b), defendant's criminal history category is VI.

e.    **Terrorism**. Because defendant warrants an enhancement under § 3A1.4(a), as explained above, the defendant's criminal history category from Chapter Four shall be Category VI.

f.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 38 which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 360 months' to life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

      g.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.  Each party is free to recommend whatever sentence it deems appropriate.

12.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.  Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.  Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15.  Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

16.  After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

## Forfeiture

17.     Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense.

18.     Defendant agrees to forfeiture of the specific property identified for forfeiture in the superseding indictment. In doing so, defendant admits that the property described below represents property involved in the offense, as alleged in the superseding indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

19.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

20.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property:

a.      Ruger Model P345 .45 caliber pistol, bearing serial number 665-01473 and associated ammunition;

23

        b.     Glock 9mm caliber pistol, bearing serial number KBS192 and associated ammunition;

        c.     Glock .45 caliber pistol, bearing serial number WFA-396 and associated ammunition;

        d.     Sarsilmaz 9mm pistol, bearing serial number T1102-15G01324 and associated ammunition; and

        e.     approximately $264,310 in United States currency.

Defendant understands that the government, after publication of notice to others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

      21.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 858.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

26

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

      b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined),

27

including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

25.    Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

26.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

29.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**Conclusion**

31.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of

its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____12/6/23_____

_____
MORRIS PASQUAL
Acting United States Attorney

_____
SHAWN MCCARTHY
Assistant U.S. Attorney

_____
JASON BROWN
Defendant

_____
THOMAS A. DURKIN
Attorney for Defendant

_____
JOSHUA G. HERMAN
Attorney for Defendant

32